BLEECKER *vs.* SMITH.

A covenant, on the part of a *lessee*, to plant a certain number of apple-
   trees, on the demised premises, and to replace those that decay or are
   destroyed, so as always to preserve the given number during the term,
   is a *continuing covenant;* and the receipt of rent, after a breach of the
   covenant, does not prevent the *landlord*, from *re-entering*, if, *subse-
   quent to the payment of rent*, there is a failure in performance on the
   part of the tenant.
The receipt of rent does not operate as a waiver, unless the rent received
   accrued subsequent to the act which works a forfeiture.
Where a *tenant* holds a lease, on condition that he will not *alien* without
   the special license of the *landlord*,and such license is granted, the estate
   becomes absolute, and the tenant holds it discharged of the conditon;
   but *it seems*, that the *exceptance of rent* by a landlord, after the breach
   of a condition by a tenant not to *underlet*, is not tantamount to a li-
   cense, and that for a *subsequent underletting* the landlord may re-enter.

    THIS was an action of *ejectment*, tried at the Saratoga cir-
cuit in May, 1833, before the Hon. ESEK COWEN, one of the
circuit judges.

    The plaintiff claimed to recover for the *breach* of certain
covenants contained in a lease of the premises in question,
executed by him to one Anson Waring, 24th October, 1817;
under which lease the defendant held the premises.  The

lessee covenanted that he would reserve and set apart *twenty acres* of the demised premises for *wood*, and would not cut or permit to be cut or destroyed any of the timber or wood growing on the 20 acres, for any purpose than for *building timber*, or *fuel* for one dwelling house only, and other necessary buildings. And he further covenanted, that he would plant 150 apple-trees, within one year from the date of the lease, on some convenient spot on the premises, at specified distances; and as often as any of the apple-trees should be destroyed or decayed during the term, that he would plant others in their stead, so as always to preserve 150 apple-trees on the premises. The lease was declared to be *upon the condition*, that if the rent should be behind and unpaid, &c. or if any or either of the covenants on the part of the lessee should be broken, it should be lawful for the lessor to *re-enter* and expel the lessee or his assigns. The plaintiff proved that, in 1830, the whole of the first growth of timber on the premises had been destroyed; that there is not to exceed 5 or 6 acres of handsome timber on the farm, and the residue of what may be called wood is *underbrush*; (five witnesses concurred in this statement; that there are not more than 82 apples-trees on the farm; and that wood had been cut and carried off the premises, within two years before the trial, by tenants living on the farm, or on a three acre lot reserved in the lease, with the knowledge of the defendant.

The defendant proved, that in June, 1820, the then tenant of the premises paid rent to the plaintiff, who at first refused to receive the same, alleging that the lease had been forfeited by the original lessee, by the cutting of wood, and by the omission to plant and keep on the farm the required number of apple-trees; he, however, received the rent. In January, 1828, he again received rent, and again in June, 1830. One witness for the defendant testified that he had *surveyed* the wood on the demised premises; that there were two parcels—one containing 18 acres, and the other 8 acres—besides which there were some scattering clusters; and he supposed there were more than 30 acres of wood in all, the growth of which was from 10 to 20 years.

NEW YORK,
May, 1835.

Bleecker
v.
Smith.

The judge charged the jury, that the forfeiture for the want of the requsite numl er of apple-trees, was waived by the acceptance of rent in 1820 with a knowledge of the forfeiture, and that the subsequent omission to replace them gave no right of entry to the landlord. As to the wood, he instructed them, that if they were of opinion that the number of acres of wood land required by the lease had been reserved, and not cut or used, except for the objects specified in the lease, then there was no forfeiture on that account. The jury found for the defendant. The plaintiff asked for a new trial.

*W. W. Frothingham,* for plaintiff.

*M. T. Reynolds,* for defendant,

*By the Court,*Savage,Ch. J. The verdict is clearly against evidence. It was proved that since 1830, and within two years before the trial, wood was cut and carried off the demised premises ; which was a violation of the condition, and of course worked a forfeiture. The principal question, however, arises out of the judge's charge.

The conditions upon which the estate was held, and for a breach of either of which the estate was forfeited, were two : one that there should be a wood lot of 20 acres reserved, from which wood and timber should be taken only for the use of the farm, and for no other purpose ; the other that an orchard of 150 apple-trees should be planted, and as often as any of the trees should be destroyed or decayed during the term, others should be planted in their stead. The judge charged that the want of the requisite number of apple-trees was no case of forfeiture, because there was shown to be a deficiency in that respect in 1820, when rent was received.

The lessee took an estate upon conditions. Those conditions were conditions subsequent, upon failure to perform which, the estate was to determine. One condition was an affirmative condition, as contradistinguished from a negative condition ; the other was partly affirmative and partly negative. The condition to plant an orchard and replace the apple-trees when destroyed was entirely affirmative, and a *con-*

*tinuing condition*—as much so as payment of rent. The cov-
enant to set apart 20 acres as a wood lot was affirmative, but
that no wood or timber should be cut except for the use of the
farm was negative.    Where the condition is negative, that
the lessee will not do a particular act without leave from the
lessor, if leave be once granted, the condition is gone, and
the estate becomes absolute and discharged of the condition.
Such was *Dumpor's case*, 4 *Co.* 120. The condition there was
that the lessee should not *alien* without the special license of
the lessor ; 'that license being given, it was held that the as-
signee took the estate discharged of the condition. In *Doe* v.
*Bliss*, 4 *Taunt.* 735, Sir James Mansfield says, "Certainly the
profession have always wondered at Dumpor's case, but it has
been law so many centuries, that we cannot now reverse it."
The case before this court did not require it, as the court dis-
tinguished it from Dumpor's case.    The principal difference
between the two cases was, that in Dumpor's case a *license* to
the lessee to assign was executed *under seal.* In *Doe* v. *Bliss*
there was no express license, but the covenant was that he
would not underlet. He did in fact underlet with the knowl-
edge of the lessor, who subsequently received rent ; but the
court held that a *subsequent underletting* was a forfeiture,
and that this tolerance was not tantamount to a license ; for,
on that principal, if a landlord once knew his premises were
out of repair, and did not sue immediately, he could never af-
ter enter for a breach of covenant by their not being repaired.
It seems to have been the opinion of Sir James Mansfield, and
his brethren, that in Dumpor's case the license should have
only sanctioned *one* assignment, and that a subsequent as-
signment without license should forfeit the estate.    As the
case stands, it proves that a license under seal to do the act,
which without license would forfeit the estate, operates as a
release of the condition altogether ; and the common pleas
held that was no authority for a case of mere omission to
take advantage of the forfeiture. The case of *Fryett* v. *Jeffreys*
1 *Esp. N. P. R.* 395, was ejectment upon a lease, with cov-
enant to repair ; and it was proved that the house was out of
repair on the day of the demise laid in the declaration. The
lessor had accepted rent after he had given notice to repair,

which he was bound to do before he could enter ; and the defendant contended that the acceptance of rent was a waiver of the forfeiture ; and Lord Kenyon said, that if the demise laid in the declaration had been *before* the payment of rent, he should have held it so ; and that the demise being subsequent, there was no reason why the lessor might not give an indulgence to the defendant and prosecute afterwards, the premises being out of repair. It is admitted that the lessee had but an estate upon condition. When either of the conditions was broken by the lessee, he had forfeited the estate which he held under the lease. It was optional with the lessor to consider him a trespasser and bring ejectment against him, or to waive the forfeiture, and to consider the lease valid. The lessee had no election ; he was bound by his lease, until the lessor should elect to consider him a trespasser. Any act of the lessor, therefore, which recognizes the lease as a subsisting operative contract, such as receiving rent under it, is a waiver of the forfeiture. The receipt of rent which accrued before the forfeiture is no waiver ; it only admits that the lease was in force when the rent became due. *To operate as a waiver, the rent must have accrued subsequent to the act which works a forfeiture.*

In this case I will consider the condition respecting the apple-trees by itself. The lessee covenants that he will plant 150 apple-trees within one year, in a particular manner, and as often as any of the trees shall be destroyed or decayed during the term, will plant others in their stead, so as always to preserve 150 apple-trees on the premises. In 1820, the lessor received rent, which he at first declined doing, because of the destruction of wood, and the want of apple-trees. Whether there had been an entire failure to plant them, or only to replace them, as those first planted died or were destroyed, does not appear ; nor do I consider it very material. The defendant says that the plaintiff then having a right to consider the estate forfeited, and not having done so, the estate is discharged of the conditions, and has become absolute in the defendant. The cases, however, establish a different doctrine. It was optional with the plaintiff to claim the forfeiture, or waive it ; if he chose to waive it, he left the lease

in force ; that lease bound the defendant to perform the conditions. His obligation is not changed by the indulgence and forbearance of the lessor; the condition remains; it is a continuing condition. The lessee was bound, during the continuance of his term, to preserve the number of apple-trees ; and the lessor is at liberty at any time to enforce the forfeiture, when a default exists or accrues after the payment of rent. The acceptance of rent waives all forfeitures up to that time. The case of *Jackson* v. *Allen*, 3 *Cowen*, 229, fully supports this doctrine. The lessor connot show any default in the lesse previous to the payment of the rent. For example : rent was paid in 1820 ; the lessor cannot go back beyond that time, to prove a forfeiture. If in 1821 the lessee had planted the trees, he was safe from forfeiture. So also rent was received in 1830 ; and for the purpose of sustaining this action, the plaintiff cannot prove any violation of the condition before that time. If the wood had been all cut off before time, that cause of forfeiture was waived; and if the apple trees had been planted before suit brought, this suit could not be sustained. But the lessee was bound to keeep, constantly, 150 apple-trees ; he was not merely to plant them once, but as often as any died. It seems there were 82. The receipt of rent in 1830 was only a declaration that the lease should continue on the same terms ; the defendant is in no better situation than if he had performed his covenant ; if he had, and if the 150 trees were in existence in 1830, ( and that is the utmost which is admitted by the receipt of rent, ) it was the duty of the defendant to have had the same number when this suit was commenced ; but the evidence shows a failure of nearly half. Here is a breach of the condition since the payment of rent—since the lessor admitted the lease was in force, and the estate in existence. If the estate exists, it is by force of the lease, and the estate thereby created is an estate upon condition. Such estate did exist in 1830, when the last rent was received ; but the condition having been subsequently broken, the lessor has a right to enter for each breach, precisely as he might have done for the first breach before he waived his entry by receiving rent. The language of the lessor to the lessee, by accepting rent, is

NEW YORK, this: "I will not enforce the forfeiture against you at pre-
May, 1835. sent, but continue the lease and estate upon the former terms
Dibble. and conditions." The only exception is, where the condition
v. consists of a single act, such as an assignment of the whole
Rogers. estate, there, according to *Dumpor's case,* the condition is
gone, by a license to assign; though the court of common
pleas, in *Doe* v. *Bliss,* evidently were of the opinion that the
estate would be liable to forfeiture for a subsequent assign-
ment; and they so decided, and took a distinction between
an express license, and an omission to enforce a forfeiture—a
mere tolerance, as Mr. Justice Gibbs expresses it. In this
case, also, wood had been cut and carried off the premises,
subsequent to the payment of rent.

I know that courts and juries lean against forfeitures, but
that leaning must not relieve parties from their contracts;
and the facts in this case do not seem to be such as to excite
sympathy. The rights of lessors must be regarded and pro-
tected, as well as those of the lessee, and justice administered
with partiality.

New trial granted.