Shaffer v. Lee.

---

Same Term.    *Paige, Willard, and Hand,* Justices.

### Shaffer vs. Lee.

A bond conditioned to furnish to the obligee and his wife all necessary meat,
drink, lodging, washing, clothes, &c. during both and each of their natural
lives, is an entire contract, and a failure by the obligor to provide for the obligee
and his wife according to the substance and spirit of the covenant, amounts to
a total breach ; and full and final damages may be recovered, for the future as
well as the past.

This cause was tried before Mr. Justice Watson at the Clin-
ton circuit, in April, 1849, and a verdict rendered for the plaintiff,

Wilder *v.* Seelye.

which the defendant, upon a case, now moved to set aside. The suit was upon a bond dated Oct. 1, 1839 , in the penalty of $10,000, with a condition that if the said James Lee, his heirs, executors and administrators should well and truly furnish to the said George Shaffer and Hannah his wife all necessary meat, drink, lodging, washing, house-room and clothes, and all other necessaries of life, as well in sickness as in health, during both and each of their natural lives, and according to their condition and rank, without any fraud or other delay, the obligation to be void. The first breach assigned was that the defendant did not, from the 31st of March, 1842, to the time the suit was commenced, furnish to the plaintiff and his wife as agreed in the condition of the bond. The second breach was substantially the same, except that it was added that in consequence of the neglect of the defendant after request to furnish, &c. during that time, the plaintiff and his wife were obliged to procure support elsewhere, and had sustained $5000 damage. The defendant pleaded *nil debet*, and gave notice of special matter, and that he had fulfilled, or had offered and been ready to do so.

Evidence was given, tending to show that the plaintiff and his wife, who were very old and feeble, lived with the defendant until the winter of 1846–7, when the overseers of the poor interfered, and took them away in a state of great destitution. They lived part of the time afterwards with a daughter, but had been inmates of the county poor house since November, 1848. A son-in-law of the defendant testified that in 1847, by the request of the defendant, he urged the plaintiff to return and live with him, which the plaintiff refused, alledging that he was not going back to be abused, and that the defendant's children were saucy. One witness testified that, at the defendant's request, he asked the plaintiff if he would live with the son-in-law of the defendant, and he answered, he had no claims upon the son-in-law. The defendant offered to show that the plaintiff was in the habit of complaining about his living when he lived with his daughter before he lived with the defendant; also that the consideration of the bond was only between seven and eight hundred dollars: all of which proof was rejected, and the defend-

ant excepted. The plaintiff insisted that the contract of maintenance was entire, and that the plaintiff was entitled to recover total and final damages for a total and final breach, and for the entire maintenance of the plaintiff and his wife in future during their lives, as well as for past neglect; and requested the judge so to charge; and that the question was one of law for the court. The defendant, on the contrary, requested the judge to charge that the contract was not entire; and that in point of law the plaintiff was not entitled to recover total and final damages for a total and final breach, and for the entire maintenance of the plaintiff and his wife in future during their lives, but only for such neglect and breaches of the contract as had happened before the commencement of the suit.

The court charged the jury to find whether there had been a total or only partial breach; and if a total breach, that then the plaintiff was entitled to recover full and final damages, and for the future as well as the past. That, to determine whether there had been a total or partial breach of the contract, they must consider whether the defendant had substantially failed to provide according to the substance and spirit of the contract, or only in some trifling things. The defendant excepted. The plaintiff further insisted that a neglect for an unreasonable time to furnish clothing, &c. was a substantial failure. The defendant, on the contrary, insisted that the plaintiff was not at liberty to claim for entire damages and for a total breach in future, because the declaration did not claim them; but this point was overruled and the defendant excepted. The defendant further requested the court to charge the jury, that as the plaintiff, when requested to return and to state what reason he had for leaving the defendant's house, said he left because the children were saucy, he was estopped from setting up any other breach. The judge refused so to charge, and the defendant excepted. The judge also charged the jury to find specially whether there was a total breach or only a partial one, and to assess the damages total or partial, as they should find the breach; to which also the defendant excepted. The jury assessed the damages

at $925,36, and stated that they found total damages for a total breach of the contract.

*G. A. Simmons,* for the defendant.

*L. Stetson,* for the plaintiff.

*By the Court,* HAND, J.　I see no force in the two minor points, that the evidence of the complaints or murmurings of the plaintiff before this bond was executed, and of the consideration of the bond were not admitted.　The former querulousness of the plaintiff did not excuse the defendant from the performance of his covenant.　And the condition of the bond was to support the plaintiff and his wife during their respective lives, without reference to the amount of the consideration.　Whether more or less, that was sufficient to support the undertaking.

Nor was the plaintiff estopped by his statement of the reason which it is said he gave for leaving the defendant's residence, and seeking support elsewhere.　The cause of action, if any, was complete before, and the defendant was not misled.

The rule for the assessment of damages is more important. The jury have found there was a total breach, and if they were authorized in law so to do, the proof sustains the verdict ; showing a most deplorable delinquency in the fulfilment of the defendant's legal as well as filial obligations.

This question is not free from difficulty.　In some cases the act and the injury are considered as continuing, and then a fresh action will lie for the continuance.　In others, although the consequences may not yet have fully appeared, the tort is deemed but a single act, and but one action can be sustained. So too in covenants ; some may be considered continuing ; and on a breach of others, final damages must be assessed.　A few cases will illustrate these principles.

In *Hambleton* v. *Veere,* (2 *Saund. Rep.* 169,) an apprentice had been inveigled away, and the master declared and recovered for the whole unexpired residue of the term ; for which cause judgment was arrested.　The term of apprenticeship

was nine years; and he was enticed away after five had expired, and the cause was tried before the end of the term. It was insisted that the apprentice might return voluntarily or compulsorily; or might die; and that the recovery did not discharge him from service; and the court held the recovery could only be for the loss of service up to the time of commencing the suit. However, in several cases the recovery for an injury sustained by a single act, not in its nature continuous, was for all the consequential damages, prospective as well as past. (*Fetter* v *Beal*, 1 *Salk.* 11. *Hodsoll* v. *Stallebrass*, 11 *A. & E.* 301.) In *Hodsoll* v. *Stallebrass*, which was an action for an injury to a servant, the plaintiff was allowed to recover for loss of service after suit. And Littledale, J. said, that a fresh action could not be brought without a new and unlawful act and fresh damage. Fresh damage alone was not sufficient. But where after a recovery for placing buttresses on the plaintiff's land to support the turnpike of the defendants, notice was given to remove them, which was not done; it was held to be a fresh trespass for which an action would lie. (*Holmes* v. *Wilson*, 10 *Ad. & E.* 503. *And see Earl of Manchester* v. *Vale*, 1 *Saund. R.* 24, *n.*) But the reporter of *Holmes* v. *Wilson* doubts whether the plaintiff could not have recovered the expense of removing the buttresses in the first action.

*Bleecker* v. *Smith*, (13 *Wend.* 530,) was a covenant by lessee to plant a certain number of apple trees; and to replace any that might from time to time decay; and it was held a continuing covenant.

But it has been held that the plaintiff must join all existing causes of action growing out of the same contract, which can be joined. In *Bendernagle* v. *Cocks*, where there were several and distinct covenants in the same instrument, a recovery for some of the breaches was held to bar a suit for other breaches then existing. (19 *Wend.* 207.) In *Pool* v. *Pool*, on a contract to support a son of the plaintiff until he became 21, the circuit judge charged that the plaintiff was entitled to recover for the whole term, which probably was unexpired when the suit was commenced, though that is not certain, as the time of

the commencement of the suit is not given. (1 *Hill*, 580.) No point was made upon this part of the case, but the verdict was set aside for other reasons; one of which was that the plaintiff had not in fact been damnified; and, perhaps, is so far somewhat opposed to the principle, often doubted, but upon which *Rockfeller* v. *Donnelly* was decided. (8 *Cowen*, 623.) The right to recover for prospective damages was much discussed in *Masterton* v. *The Mayor, &c. of Brooklyn*, (7 *Hill*, 61.) That was an agreement to deliver what marble should be necessary to erect a certain building, in such order and at such times and as fast as the superintendent should direct, and to be paid for in certain proportions, as the building progressed. After about one-sixth had been delivered, the defendants suspended the work and refused to receive any more. It was testified that the work could have been completed in five years. The covenant was entered into in January 1836, and the suit was commenced in 1840. As I understand the opinions delivered, all the judges considered the plaintiff entitled to recover entire and final damages for the non-fulfilment. Nelson, Ch. J. and Bronson, J. thought the price of the article at the time of the breach the rule; but Beardsley, J. as the time of performance was supposed to have elapsed before the trial, thought the damages should conform to the actual prices during the years when it was to have been delivered. But the chief justice says, "Where the contract, as in this case, is broken before the arrival of the time for full performance, and the opposite party elects to consider it in that light, the market price on the day of the breach is to govern in the assessment of damages." And Beardsley, J. says, the "plaintiffs were not bound to wait till the period had elapsed for the full performance of the agreement, nor to make successive offers for performance, in order to recover all their damages. They might regard the contract as broken up, so far as to absolve them from making further efforts to perform, and give them a right to recover full damages as for a total breach." Though he said he was not prepared to say but that, had they made repeated offers to perform and been refused, they might have maintained successive suits.

In *Ld. Sondes* v. *Fletcher*, the defendant had agreed to resign a living, on either of two persons becoming capable of taking it. He refused, and the court held that he was liable for the value of the life interest of the person the plaintiff intended to present, which was four years more than his own. (5 *B. & Ald.* 835.)

Where a party agreed to support two persons, who left him, the court say, he was under a continuing obligation and bound to support them again on request. (*Hogeboom* v. *Hall*, 24 *Wend*, 149.) In the case of *Royalton* v. *R. and W. Turnpike Co.* the defendants had agreed to keep a bridge in repair for a certain period, 12 years of which had not elapsed, for $25 per year. It was held, upon a breach of this contract, that the plaintiffs might assess the damages for the whole unexpired term. (14 *Vt. Rep.* 311.) The plaintiff places much reliance upon *Fish* v. *Folley*, (6 *Hill*, 54.) That was a covenant made in 1822, to furnish the plaintiff with a certain amount of water to carry a mill. On default in doing so, the plaintiff brought a suit and recovered in 1835 for a failure from 1826 to that time. The second suit was tried in 1840, and was brought to recover for non-performance from 1835 to that period. The court held the first suit a bar. Mr. Justice Gridley, who tried the cause at the circuit, in delivering the opinion in the supreme court, in the recent case of *Crain* v. *Beach*, said that at the time of bringing the first suit, in *Fish* v. *Folley*, and always after, a further performance had become impossible by the use of the stream by the state. But the court did not put the cause upon that ground.

*Crain* v. *Beach*, cited by the defendant's counsel, came before this court, sitting in the fifth district, in 1848. (2 *Barb. S. C. R.* 120.) The plaintiff granted a right of way across his land, and agreed to put up a gate at the entrance of the way, which he might keep there during his pleasure; and the defendants covenanted also in the same instrument, to make all the repairs necessary to be made to the gate; and in passing and repassing were to use common care in having it shut after them. (*See the covenant in* 2 *Comst. R.* 87.) The gate had been taken down and carried away by some person unknown, in June, 1846,

and had never been replaced by the defendants, who had refused to do so on request. On the 29th of September, 1846, the plaintiff sued the defendants; and on the 19th of October, 1846, recovered damages to the amount of $1. The defendants still neglected to replace the gate; and in December, 1846, the plaintiff again sued the defendant. The first suit was held by the justice, and afterwards by the common pleas, to be a bar. But the supreme court reversed the judgment, and the court of appeals held they were right. (*Beach* v. *Crain*, 2 *Comst. R.* 86.) The declaration in the first suit, alledged that after the gate had been erected, the defendants did not keep the same in good repair and condition, but suffered it to become dilapidated, destroyed and removed, and would not replace the same by the erection of a new one or otherwise; whereby the plaintiff was damaged, by reason of cattle grazing on his land, &c. In the second suit, the breach assigned was, that the defendants, after the gate was erected, did not make the necessary repairs, but suffered it to become dilapidated, broken down and nearly destroyed, and to remain in that condition, by which the plaintiff had suffered great damage by cattle, &c. The first suit was tried on the 19th of October; and the plaintiff, in the second, claimed damages from that time to the 30th of November. The request to replace, was before the 1st of September. The gate posts and two iron staples remained; and the cost of replacing the gate would have been one dollar besides the material. The gate remained at the time of the second, as it was at the time of the first trial. This was a continuing covenant for some purposes. If a new gate had been erected, and the defendants had refused to keep that in repair, or had neglected to shut it, there would have been new breaches. The judge, who delivered the opinion in the court of appeals, seems to intimate that some new injury might result to the plaintiff by the defendants' neglect, and both declarations aver that he had suffered damage by cattle. And it seems to me, the case must stand upon this ground; though, with deference, it may be remarked that the covenant was not that the defendant would keep out cattle; and even if the plaintiff, on the covenant in *Crain* v. *Beach*,

could, in any case, recover for such consequential loss, as for a crop of grain, &c. destroyed for want of a gate, no proof of any such injury appears in the case. As I understand the declarations, they are substantially alike, except that the first complains also that the gate was not replaced; and the last suit is for neglect to repair after the first suit was tried; after a recovery for not keeping it in good repair and condition, and for suffering it to become dilapidated, destroyed and removed; and for not replacing it by the erection of a new one. It certainly would be going very far, to sustain subsequent daily suits for not making necessary repairs to, and for suffering to become dilapidated, broken down and nearly destroyed, a gate which did not exist. The defendants could not repair or shut the gate until it was rebuilt; and the first recovery was in part because there was no gate. Damages, on a covenant to repair, may be recovered now, and again after, and so *toties quoties.* (*Kingdon* v. *Knottle,* 1 *Maule & Selw.* 365. 4 *Id.* 53.) But it is believed only one action will lie for a neglect to rebuild—a mere continuous non-feasance. It has been said that one who persists in holding out a pole over his neighbor's land, is liable in trespass so long as he continues to do so. (*See Hudson* v. *Nicholson,* 5 *Mees. & Wels.* 437; *Thompson* v. *Gibson,* 7 *Id.* 456.) In *Holmes* v. *Wilson,* (*supra,*) the defendants continued to use the buttresses which were upon the plaintiff's land, and which supported their road. This was an act, not a mere non-feasance. As remarked in *Hodsoll* v. *Stallebrass,* (11 *Ad. & Ellis,* 301,) there must be a new and unlawful act, and fresh damage. But the court, in *Beach* v. *Crain,* does not say that Crain could not, in the first suit, have recovered sufficient to rebuild the gate. That is allowed on a covenant to repair. (*See Vivian* v. *Champion,* 2 *Ld. Raym.* 1225; *S. C. Holt,* 178; *Doe* v. *Rowlands,* 9 *Carr. & Payne,* 734; *Luxmore* v. *Robson,* 1 *Barn. & Ald.* 584; *Green* v. *Eales,* 2 *Ad. & Ellis,* new series, 225; *Neale* v. *Wyllie,* 3 *Barn. & Cress.* 533; *Platt on Cov.* 289.) And, it being on his own land, he could have entered for that purpose. Suppose the action had been brought upon the covenant in *Bleecker* v. *Smith,* (*supra,*) because there

were but 100, when there should have been 150 apple trees? The plaintiff could not, I apprehend, bring successive suits for a continued neglect to supply this particular deficiency. Where the defendant overflows the plaintiff's land, it may be considered a fresh injury, as well as a fresh damage.

Where the neglect or misconduct of the defendant is such that the plaintiff may consider it a total breach, there, as in *Royalton* v. *R. and W. Turnpike Co.*, *Fish* v. *Folley*, and *Masterton* v. *Mayor, &c. of Brooklyn*, entire damages may be recovered. (*And see Sedgwick on Dam.* 231.) I think that rule applies to this case. It follows that the motion for a new trial must be denied.

New trial denied.

---

SAME TERM. *Before the same Justices.*