## SUPREME COURT.

EVA SCHELL agt. ISAAC PLUMB *et al.*, Executors, &c.

In an action to recover damages for the breach of a contract to support the plaintiff during her life, *prospective damages* may be allowed, and the introduction as evidence of the Northampton tables, to show the probabilities of the plaintiff's life, is proper on that point.

It is proper to show that a witness has made a statement inconsistent and irreconcilable with the *facts* to which he has *testified.* And if he denies that he has made any such statement, then to show that he has. And it is immaterial whether it be a statement of fact or the expression of an opinion, if it be adverse to his testimony.

*Third Department, Albany General Term, March,* 1873.
*Before* MILLER, DANIELS *and* DANFORTH, *JJ.*

ACTION for damages for breach of contract to support plaintiff during life by defendants' testator.

The contract was made in Germany, in 1856, and was oral. The terms were that the plaintiff should pay over to the defendants' testator what money she then had, about $300, German money, and what she might thereafter earn over and above the supply of her wants, and he should provide her a home and maintenance during her life. The breach alleged is the turning away of the plaintiff about the year 1870, but is proved to have occurred in the spring of 1869.

Peter Thomas, the defendants' testator, died February 4, 1870, and letters testamentary were issued to the defendants March 14, 1870.

The complaint alleges the making of contract, performance by the plaintiff, breach by the testator, death of the testator

and appointment of the defendants as his personal representatives, and asks judgment for $2,000 and costs.

The answer denies the making of the alleged contract, and alleges a willingness on the part of the defendants' testator to support the plaintiff, and that plaintiff left of her own accord, and also that her conduct was bad.

Trial before Mr. justice MURRAY and a jury, at the Chenango circuit, held May 30th, 1872, and a verdict rendered for plaintiff for $1,000.

The defendants move for a new trial on a case and exceptions.

D. L. ATKYNS, *for the defendants, appellants.*

I. The question raised upon the whole case is important and, substantially, uncontrolled by precedent in this state, and, to my mind, the position that upon default in such a continuing contract entire damages, extending beyond the commencement of the action, may be assessed, is opposed to the current of authorities within and without the state.  In 8 *B.*, 412, it does not appear that any recovery was had beyond damages accrued at the time of bringing action (*vide* 35 *Barb.*, 579), and the last case cited is principally as to the effect of the statute of frauds on such a contract.  From the proposition that damages accruing after suit may be given, MORGAN, justice, dissents (*Dresser* agt. *Dresser*, 35 *B.*, 578, 579).  Hence I claim the doctrine of *stare decisis* is not in this case.

II. In the attempt to estimate future damages in a case like this, there is "insuperable difficulty (2 *N. Y.*, 97; 35 *Barb.*, 579); a difficulty which has compelled the courts to arbitrarily exclude, from the consideration of juries, damages depending upon uncertain conjecture and speculation as to the future operation of given causes or conditions.

(*a.*) Profits, as such, are not allowed as damages, unless they can be *definitely* ascertained by reference to established

Schell agt. Plumb.

rates; although the loss of them necessarily result from breach of the contract. The chief reason for disallowance being "that they are too uncertain, and depend upon too many contingencies to be entitled to judicial sanction" (*Rhodes* agt. *Baird*, 16 *Ohio St.*, 573; *La Armistad, etc.*, 5 *Wheat.*, 389; *Griffin* agt. *Colver*, 16 *N. Y.*, 489; *Academy, etc.*, agt. *Hackett*, 2 *Hilt.*, 217).

The same rule should control in any other case, where it is impossible to apply any definite rule of damages with certainty and precision (5 *Lans.*, 524).

(*b.*) "Actual compensation should only be allowed for actual loss." This has grown into a maxim. A contrary rule is without equity. I submit that in this case this maxim has been subverted,—was given no application except in *theory*. If plaintiff lives twenty years, does this verdict compensate her? If she had died the day after the trial, what right had her estate to $1,000 for an actual loss of $325? (*Weller* agt. *Eames*, 2 *Am. Rpts.*, 150, *and cases cited; Gilbert* agt. *Wiman*, 1 *Comst.*, 550; *Aberdeen* agt. *Blackman*, 6 *Hill*, 324; *Hayes* agt. *Moynihan*, 52 *Ill.*, 423).

III. The defendants should not suffer because plaintiff has brought her action in a form which renders an estimate of her damages impossible. Her remedy was adequate in equity. She could have compelled a literal performance, or got its yearly worth in money. This would be just to all. The verdict is totally unjust, because by no human power can it be known whether it is compensation or robbery.

The very ancient rule of allowing juries to guess at and conjecture damages in actions on contract is substantially overruled. The courts now seek to find a measure which can definitely appear from the terms of the contract, or from opinions of competent persons, as to values, or market rates, the legal measure being declared by the court. And arbitrary rules have been established in cases possessing the same uncertainty as this, and where before were only guess, conjecture and uncertainty (*Rhodes* agt. *Baird*, 16 *Ohio St.*, 573;

---

Schell agt. Plumb.

---

*Taylor* agt. *Bradley*, 39 *N. Y.*, 129; *Dexter* agt. *Manley*, 4 *Cush.*, 15).

IV. *Shaffer* agt. *Lee* (8 *B.*, 412), from all that appears, needed to decide only that the plaintiff could recover the ascertained damages up to the time of suit. Much of the opinion is *obiter dictum;* and very clearly the declaration, that only one action would lie, that one recovery ended the contract, and final damages must be assessed, is contrary to the authorities (62 *Barb.*, 482).

I submit, that this was a continuing contract; that the deceased could not terminate it alone, and that successive actions could be brought thereon by the plaintiff, *toties quoties*, in which by fixed and certain rules she could have recovered "actual compensation for actual loss" (*McConnell* agt. *Kibbe*, 33 *Ill.*, 175; *Ind. C. R. R.* agt. *Moore*, 23 *Ind.*, 14; *Berry* agt. *Harris*, 43 *N. H.*, 376; *Remilee* agt. *Hall*, 31 *Vt.*, 582; *Wetmore* agt. *Aldrich*, 10 *Mich.*, 515; *Stuyvesant* agt. *Major*, 11 *Paige*, 414; *Hambleton* agt. *Vere*, 2 *Saund.*, 169, 337; *Cook* agt. *Whorwood*, 2 *Burr.*, 1087; 10 *Coke*, 116; *Rudder* agt. *Price*, 1 *H. Bl.*, 550; *Lewis* agt. *Peachy*, 1 *H. & C.*, 518; *Stone* agt. *Rogers*, 2 *M. & W.*, 443; *Bleecker* agt. *Smith*, 13 *Wend.*, 530; *Warner* agt. *Bacon*, 8 *Gray*, 397; *Hart* agt. *Hart*, 14 *How.*, 418; *Woodbury* agt. *Duval*, 15 *Ind.*, 160; *Church, etc.*, agt. *Brown*, 54 *Barb.*, 191; *Shadwell* agt. *Shadwell*, 9 *C. B., N. S.*, 159; *Atwood* agt. *Norton*, 27 *Barb.*, 638; *Vide Beach* agt. *Crain*, 2 *Comst.*, 86).

And because successive actions may be brought, no damages are allowed accruing after suit. This principle applied to this case would give compensation and no more (*See* 2 *Cow. Tr.*, 1011, 2 ed., *and cases cited;* *Holmes* agt. *Wilson*, 10 *A. & E.*, 503; *Beckwith* agt. *Griswold*, 29 *Barb.*, 291).

With deference to the learned justice sitting at circuit, I think he erred in holding that plaintiff could recover final damages, as for a total breach, and that for such error a new trial must be granted.

V. An action for damages in cases of this kind affords no remedy, just or adequate, to plaintiff or defendant, unless held to be a continuing contract, with the right to successive actions *toties quoties*. And the courts, declaring that no proper measure of entire damages can be applied, have in several cases decided that, for this reason, they will not allow one party to such a contract to terminate it, but will compel the performance thereof by the exercise of equitable power, a remedy perfectly just, and which should exclude the attempt at impossible compensation by guessing at damages (*Rhodes* agt. *Rhodes*, 3 *Sandf. Ch.*, 279; *Marsh* agt. *Blackman*, 50 *Barb.*, 329; *Chubb* agt. *Peckham*, 2 *Beas.* [*N. J.*], 207; *Sullivan* agt. *Tuck*, 1 *Md. Ch.*, 59; *Buxton* agt. *Lister*, 3 *Atkyns*, 385; *Ball* agt. *Coggs*, 1 *Bro. P. C.*, 140; *Adderly* agt. *Dixon*, 1 *Sim. & Stu.*, 607; *Davis* agt. *Hone*, 2 *Sch. & Lef.*, 341; 1 *Chit., Gen. Pr.*, 854; *Pegge* agt. *Lampeter*, 2 *Moak Eng. R.*, 669).

VI. The justice at circuit erred in submitting to, and charging, the jury that they might decide how long the plaintiff would live; how much it would probably cost her to support herself through life, and in admitting the Northampton tables as evidence of her chances of life (*Morgan, jus.*, 35 *Barb.*, 579).

(*a.*) They were hearsay; and we were deprived of the benefits of cross-examining as to accuracy of the estimates .

(*b.*) Living witnesses could have been produced, who had made the subject a study.

(*c.*) No judicial notice could be taken of those tables. They are only of private authority.

(*d.*) Upon no principle are they evidence on a contested question of private rights (*Darby* agt. *Ouseley*, 36 *Eng. L. & Eq.*, 518).

(*e.*) The following cases exclude such private-pen-productions from evidence, and show the principles which must also exclude these tables (1. *Bank Note Detectors not admissible*: *Payson* agt. *Everett*, 12 *Minn.*, 216; 2. *Nor newspaper quo-*

*tations of the value of gold:* 5 *Robt.,* 124; 3. *Nor You-att's Treatise: Fowler* agt. *Lewis,* 25 *Tex.,* 380; 4. *Nor Veterinary or Medical Works: Washbun* agt. *Cuddily,* 8 *Gray,* 430; *Yoe* agt. *State,* 49 *Ill.,* 410; 5 *C. & P.,* 73; 3 *Bos.,* 7; 5. *Nor almanac to prove time of sunise: Tutton* agt. *Darke,* 5 *Hurl. & Nor.,* 647; 6. *Nor work on Popery, to prove bulls, canons, &c.: Darby* agt. *Ouseley,* 36 *Eng. L. & Eq.,* 518; 7. *Nor Army Rules,* 4 *B. & C.,* 292; 8. *Nor Log Book: U. S.* agt. *Gilbert,* 3 *Sum. R.,* 70; 9. *Nor Lloyd's Reg. Ship'g:* 5 *C. & P.,* 475; 10. *Such works may not be used as evidence of any fact in issue as to private rights: See a strong and thoroughly considered case, Darby* agt. *Ouseley, supra*).

(*f.*) As well use Malthus to prove geometrical ratio of increase in population, or Darwin as evidence of the gradations from monkey to man.

VII. From Metler's testimony the jury might have found (indeed such is the evidence) that this was a contract for personal care and attention in the "home and family" of deceased, which would terminate upon his death, and the death of his family. The refusal so to charge was error (14 *How.,* 418; 8 *Barb.,* 557; 25 *Conn.,* 530; 10 *Allen,* 85; 7 *R. I.,* 589; 1 *Hill,* 580; 21 *Wis.,* 395; *Rollins* agt. *Riley,* 44 *N. H.,* 9).

VIII. From the evidence of plaintiff and Robinson, it appears that she had worked and had her board since leaving Thomas. No charge was made for work or board. It must be presumed from the evidence that the one paid for the other. She was bound to earn her board, if able. She done so up to the trial. There was nothing to submit to the jury as to the difference between the *actual* value of her service and her board. It was a "proposition without evidence" (*Noakes* agt. *People,* 25 *N. Y.,* 380, 540; *Storey* agt. *Brennan,* 15 *N. Y.,* 524; *Gale* agt. *Wells,* 12 *Barb.,* 84; *Chirac* agt. *Reinecker,* 2 *Pet.,* 613).

IX. Jacob Harris, husband of one of the defendants, was a witness for defendants. He testified to certain *material facts,*

to wit: contradicted the plaintiff and Metler as to amount of money had by Thomas of plaintiff, in Germany; as to use of it; testified to a conversation with plaintiff and Thomas, from which the fair inference is that no bargain was made by Thomas to support plaintiff, but that Thomas gave her a home as long as she behaved well; testified to conduct on plaintiff's part which would justify Thomas in refusing to keep her longer, and to freaks of passion which had a strong tendency to confirm, and did confirm, the evidence of Ellen Harris, that plaintiff went voluntarily away.

And upon the question of damages, testified that plaintiff could earn her board and clothes, while plaintiff's witnesses said she would fail of that $100 a year.

His credit was destroyed as a witness, by cross-examination as to immaterial matter, an opinion, and upon his denial, contradicting him.

(*a.*) The question, whether Harris had said plaintiff ought to have $1,000, was immaterial to the issue. He *admitted* ill-feelings towards plaintiff. He testified to no opinion. *None would have been proper.* He testified to certain material *facts.* He was discredited, not by proof of any different statement of any fact, but by proof that he had expressed an opinion out of court, upon the whole merits, or amount plaintiff should recover, *without reference to the facts on which such recovery depended (Elton* agt. *Larkins,* 5 *Car. & Pay.,* 385; *Holmes* agt. *Anderson,* 18 *Barb.,* 420; *City Bank* agt. *Young,* 43 *N. Hamp.,* 457; *Lane* agt. *Bryant,* 9 *Gray* [*Mass.*], 245; *Hubbell* agt. *Bissell,* 2 *Allen* [*Mass.*], 196; *Rucker* agt. *Beaty,* 3 *Ind.* [*Port.*], 70).

13 *N. Y.,* 268, does not conflict with these cases. Stebbins had given an opinion. His opinion was contradicted by what he had before said.

(*b.*) Plaintiff having cross-examined Harris as to immaterial matter was bound by his answer (*Winton* agt. *Meeker,* 25 *Conn.,* 456; *Fletcher* agt. *Boston, &c.,* 1 *Allen* [*Mass.*], 9; *Carpenter* agt. *Ward,* 30 *N. Y.,* 243; *Plato* agt. *Reynolds,* 27 *N.*

*Y.*, 586; *State* agt. *Staley*, 14 *Minn.*, 105; 45 *N. Y.*, 125).

(*c.*) The question to Harris, as to what he said to Robinson, *was immaterial* to the issue. The test of immateriality is held to be : " If the answer of a witness is a matter which the cross-examining party would be allowed to prove on his part, in evidence ; if it have such a connection with the issue, that such party would be allowed to give it in evidence, then it is a matter in which the witness may be contradicted " *Pollock, C. B., Att'y-Gen.*, agt. *Hitchcock*, 1 *Exch. R.*, 91, 99 ; *Combs* agt. *Winchester*, 39 *N. Hamp.*, 13 ; 2 *Phil. Ev.*, 969, 970,*ed.* 1859).

In 39 *N. H.* (*supra*), the same test is adopted, adding : " if a question which could be put by party calling."

X. Under these *exceptions* (*Code*, § 265 ; 31 *Barb.*, 171 ; 38 *B.*, 117) such errors in admission of evidence cannot be disregarded. It may, it did hurt the defense (*Sprague* agt. *Cadwell*, 12 *Barb.*, 516 ; *Worrall* agt. *Parmelee*, 1 *Comst.*, 519 ; *Williams* agt. *Fitch*, 18 *N. Y.*, 546 ; *Brown* agt. *Richardson*, 20 *id.*, 476 ; *Erben* agt. *Lorillard*, 19 *id.*, 299 ; *Weber* agt. *Kingsland*, 8 *Bos.*, 415, 441 ; *Hahn* agt *Van Doren*, 1 *E. D. Smith*, 411 ; 31 *How.*, 372 ; 46 *N. Y.*, 235).

The rule upon a case has no application.

It is respectfully submitted that manifest errors crept in, in the haste of the trial at circuit, to the prejudice of the defendants. A new trial should be granted, with costs.

HOLDEN & FULLER, *for plaintiff, respondent.*

I. An action for entire damages can be maintained for breach of contract to support a person during life (*Dresser* agt. *Dresser*, 35 *Barb.*, 573 ; *Shaffer* agt. *Lee*, 8 *id.*, 412 ; *Royalton* agt. *R. & W. Turnpike Co.*, 14 *Vt.*, 311 ; *Fish* agt. *Falley*, 6 *Hill*, 54 ; *Masterton* agt. *Mayor of Brooklyn*, 7 *id.*, 61 ; *Greene* agt. *West Cheshire Railway Co.*, 1 *Moak, Eng.*, 546).

II. There was a preponderance of evidence in favor of the

Schell agt. Plumb.

plaintiff upon all points, and every question was fairly submitted to the jury.

III. The evidence of the value of plaintiff's support for the last three years was properly admitted, no objection being taken to the competency of the witnesses.

IV. The Northampton tables were properly admitted to aid the jury in assessing damages. The objection was only to materiality and competency. The use of those tables for such a purpose has become a part of the law (*Grier* agt. *Mayor of New York*, 1 *Abb.* [*N. S.*], 206 ; *Wager* agt. *Schuyler*, 1 *Wend.*, 553 ; *Guthrie* agt. *Pugsley*, 12 *John.*, 126 ; *Jackson* agt. *Edwards*, 7 *Paige*, 386, 408 ; 68 *Penn. St.*, 400 ; 59 *Maine*, 488 ; *see Rule* 85, *supreme court*).

V. The evidence of Lysander Robinson to discredit Jacob Harris was properly received. Harris, in his direct examination, had testified that the plaintiff told him soon after she came to this country that she had not any property, and that Peter told her that when she behaved herself she could stay ; that she had but $105, German, at sixty-five cents each, and out of that Peter had paid for her cow twenty-eight dollars, and six years' interest, and her passage over ; and that her temper and conduct were very bad ; and that her ability to labor was about as good as it had been for fifteen years.

On cross-examination Harris swore that he had been married to defendant Ellen one year and two months ; and that he did not tell Robinson, the spring or summer after Peter died, that the plaintiff ought to have $1,000 out of Peter's estate. The evidence of Robinson was material as affecting the credibility of Harris, and related to the same matter which Harris testified about on his direct examination, and showed that his mind had been changed upon his marriage with Ellen.

It is not as if Harris had been asked about a transaction affecting his character. It shows what his mind had been upon the very transaction about which he testified on his direct examination. " The moral effect of the evidence

would operate on a reasonable mind with considerable force."

It was received for the sole purpose of contradiction (*Patchin* agt. *Astor Mut. Ins. Co.*, 13 *N. Y.*, 268; *Gandolfo* agt. *Appleton*, 40 *id.*, 533; *Chapman* agt. *Brooks*, 31 *id.*, 75; *Fleet* agt. *Murton*, 1 *Moak, Eng.*, 32, 36, 37).

VI. The objection to the question put to Robinson was insufficient, there being no suggestion that the evidence was incompetent as being an opinion (*Atkyns* agt. *Elwell*, 45 *N. Y.*, 753).

VII. The relation of witness to parties and subject-matter of suit has always been held material (*Newton* agt. *Harris*, 2 *Selden*, 345; *Slocum* agt. *Cent. R. R. Co.*, 45 *N. Y.*, 125; *Starks* agt. *People*, 5 *Den.*, 106).

VIII. The party who alleges error in an appellate court must show it specifically (*Bryant* agt. *Trimmer*, 47 *N. Y.*, 96; *Baptist Ch.* agt. *Brooklyn Fire Ins. Co.*, 28 *id.*, 153).

IX. The charge was in all respects correct.

1st. A correct rule of damages was laid down.

2d. The jury were properly instructed in the use of the tables.

3d. The amount of the property of the deceased was not in issue.

4th. If any contract was proved, it was to support plaintiff during life.

5th. If the contract was valid and not broken the plaintiff was a part of Peter Thomas' family, and as long as she lived, and the case supposed of his death would leave his family still in existence.

6th. The request of defendant should have been limited by inserting the words "and not elsewhere or otherwise" after the word "deceased" (*Carpenter* agt. *Stillwell*, 1 *Kern.*, 61; *Hodges* agt. *Cooper*, 43 *N. Y.*, 216).

X. Motion for nonsuit was properly denied.

XI. A new trial cannot be asked on grounds not taken at the trial (*Hubbard* agt. *Russell*, 24 *Barb.*, 404; *Gelston* agt. *Hoyt*, 13 *Johns.*, 577; *Abernethy* agt. *The Society of the Ch.*

*of the Puritans,* 3 *Daly,* 1; *Paige* agt. *Fazackerly,* 36 *Barb.,* 392; *Rue* agt. *Perry,* 41 *How.,* 385).

The motion for a new trial should be denied.

*By the Court,* MILLER, *P. J.*—This action was brought for damages sustained by a breach of a contract made by the defendant's testator in his life for the support of the plaintiff.

The main question to be determined is, whether an action for entire damages can be maintained for a breach of a contract of this character.

While the question is not entirely free from embarrassment, and there are difficulties in many cases in recovering for prospective damages, yet the rule is well settled that such damages may be allowed. In actions for personal injuries occasioned by another, such damages frequently constitute no inconsiderable portion of the amount to be recovered, and must be estimated somewhat upon evidence which forms no very certain basis for accurate and careful calculation. More reliable and satisfactory evidence is furnished in the case at bar than is usually presented, and I am unable to discover any valid reason why the plaintiff could not recover one entire amount instead of being compelled to bring separate actions from time to time for separate and distinct breaches of the contract, thus causing a multiplicity of suits, which it is the policy of the law to discourage. The value of the support of an aged person is not difficult to estimate, and in accordance with well established rules, which the courts have sanctioned, the value of the life itself can, without much difficulty, be computed.

With evidence tending to show both these essential elements of the plaintiff's right to a recovery of damages, I do not think that it can be fairly claimed that the damages recovered in this case are so uncertain, speculative and conjectural as to be beyond any recognized rule of law.

In *Shaffer* agt. *Lee* (8 *Barb.,* 412) an action was brought upon a bond to furnish to the obligee and his wife a support

during their lives, and was held that it was an entire contract; that a failure by the obligor to provide for the obligee and his wife, according to the substance and spirit of the covenant, amounted to a total breach, and that full damages might be recovered for the future as well as the past. The learned judge who wrote the opinion in the case last cited remarks that where the neglect or misconduct of the defendant is such that the plaintiff may consider it a total breach, entire damages may be recovered.

The distinct question now considered was presented upon the trial, and it is an authority directly in point (*See also Dresser* agt. *Dresser*, 35 *Barb.*, 373).

There was no error, I think, in introducing the Northampton tables as evidence, and of reading from them so much as showed the probabilities of life of a person of the age of plaintiff. These tables are used for the information and guidance of courts of justice in determining the probabilities of human life and the value thereof, and furnished to the jury some information which rendered material aid in forming a conclusion as to the amount of damages in the plaintiff's case.

They are the result of careful inquiry and the closest calculations of experienced men, which have been adopted by the courts as the most accurate means of estimating the moneyed value of lives, and I see no objection to their introduction as testimony.

The evidence of Robinson to contradict Harris was, I I think, properly received. Harris' testimony tended to contradict the plaintiff's evidence as to certain facts, and on cross-examination he denied that he had said that the plaintiff ought to have $1,000 out of the estate of the testator. Such a declaration would have been inconsistent with the testimony which he had given, and I think it was competent to contradict him in this respect by showing that he had made such a statement.

Upon principle, without reference to authority, it seems to me it is very clear that it is proper to show that a witness has

Schell agt. Plumb.

made a statement inconsistent and irreconcilable with the facts to which he testifies; and if he denies that he has made any such statement, then to show that he has.   And it matters not whether it be a statement of fact or the expression of an opinion, if it be adverse to the story which he has narrated.   If it be opinion in direct conflict with his evidence it would clearly tend to impair the credit of the witness to some extent, and in many cases as much perhaps as if it was a fact.   I think the judge properly refused to charge as requested, that if the contract was to provide the plaintiff with a home in the family of the deceased, his death terminated the liability.   The purport of the contract, if any was made, was to support the plaintiff during her life, and the general character of the evidence was to that effect.   And even if it had been confined to his own family, as it was for the life of the plaintiff, I think that the testator's death would not terminate the obligation.

There was no error in the charge or in any of the rulings upon the trial, and judgment must be ordered on the verdict for the plaintiff, with costs.