CATHARINE E. CLARK, RESPONDENT, *v.* SOCIETY OF SAINT JAMES' CHURCH, CARTHAGE, APPELLANTS.

*Witness—what evidence is admissible to discredit the testimony of—what questions are proper to be put on cross-examination—when an expression of an opinion by a witness contrary to his testimony, tends to discredit it.*

This action was brought by the plaintiff, who claimed to be the widow of one William Clark, to recover her dower in certain lands devised by the said Clark to the defendant. The latter denied that the plaintiff was ever married to Clark. Upon the trial the plaintiff gave evidence tending to show that on the 12th of October, 1870, she was married to Clark, at his house, near Carthage, Lewis county, by a Catholic priest, in the presence of Bridget Foley (her sister), and Catharine Purcell. Two witnesses for the plaintiff, who testified that the marriage ceremony was performed by the priest on the day stated, said that he remained at Clark's house on that occasion about two weeks. The priest died before the trial of this action.

The defendant offered in evidence a register of baptisms kept by the priest at his church in Schenectady, containing entries in his handwriting showing baptisms performed by him. in that city, on the 1st, 6th, 9th, 10th, 16th, and 23d of October, 1870.

*Held,* that the entries in the book were admissible to discredit the testimony of the witnesses to the effect that the ceremony took place on October 12th. and that the priest then remained in Lewis county for two weeks.

*Held,* further, that it was also admissible to show that Bridget Foley, after the date of the alleged marriage, executed a receipt for her sister, and signed it "E. E. *Foley*, by sister B. A. Foley."

*Held,* further, that it was proper, on the cross-examination of Bridget, to ask her whether, after the date of the alleged marriage, she had not told one Mathews that she had advised her sister to come away from Clark, and not work there any longer, and that she would make her do so.

A witness for the plaintiff testified to a conversation with Clark, in which the latter admitted that he was married to the plaintiff. *Held,* that it was proper, on cross-examination, to ask him if he had not subsequently stated that he did not believe that the plaintiff was married to Clark.

APPEAL from a judgment, in favor of the plaintiff, entered upon the verdict of a jury, and also from an order denying a motion for a new trial, made by the defendant upon the minutes of the justice before whom the action was tried.

The action was brought by the plaintiff, who claimed to be the widow of William Clark, deceased, to recover her dower in four hundred and nineteen acres of land, whereof he died siezed. The plaintiff alleged that she was married to the deceased on October 12, 1870, and that he died on the 1st day of June, 1874. The answer of the defendant alleged that the plaintiff was never married to William Clark, and that she was not his widow; that the lands mentioned in the complaint were devised to the defendant by the said Clark, and that his will had been duly admitted to probate, and that the defendant was the owner of the lands in fee.

The jury found a special verdict, viz. :

"The plaintiff was married to William Clark, deceased, on the 12th day of October, 1870, at the house of the said William Clark, in Croghan, Lewis county, in the presence of Bridget Foley and Catharine Purcell, by Reverend Michael Clark, a priest of the Roman Catholic Church."

The mesne profits were subsequently found, and assessed by a referee, and judgment entered for the recovery of dower, and the mesne profits and costs.

The defendant's motion for a new trial on the minutes was denied, and an exception taken. Upon a motion for a bill of particulars, an order was made requiring the plaintiff to state " the time and place of her marriage to William Clark; the day, month, and year when said marriage took place; the house, room or building in

which it took place; how and in what *particular* manner the said marriage contract was entered into between her and said Clark; what person performed said marriage, if any, and what person or persons were present when said marriage was entered into and took place."

The order was obeyed, and such a bill of particulars furnished. This order was not appealed from.

*Dennis O'Brien* and *P. C. Williams*, for the appellant.

*Starbuck & Sawyer*, for the respondent.

HARDIN, J.:

We cannot properly review the order for a bill of particulars in this case, nor the discretion exercised by the Special Term in prescribing the terms thereof. The Special Term had power to make the order. (*Tilton* v. *Beecher*, 59 N. Y., 176.)

The plaintiff called witnesses who gave evidence tending to sustain the allegation that a marriage took place at the house of Clark, on the 12th day of October, 1870, between him and the plaintiff; and also witnesses giving admissions of the deceased tending to corroborate and sustain the averment of marriage.

The defendant, to support its averment that no marriage ever was solemnized between the plaintiff and the deceased, produced very much evidence. 1. The deceased made and published his last will and testament on the 13th day of March, 1873, which was admitted to probate, with an unimportant codicil, and in it he devised the real estate described in the complaint to the defendant; and in the will he gave to the plaintiff, by the name of "Catharine Foley," a mortgage which he had received from one Collins. 2. Much evidence was given tending to show that the plaintiff, in all business transactions, used, and was known by the name of Catharine E. Foley, down to the time of the death of Clark, in June, 1874. 3. Many acts and admissions of the plaintiff were shown, between the 12th of October, 1870, and June, 1874, tending strongly to indicate that she was a single woman, and that no marriage had ever taken place between her and Clark.

Upon the conflicting evidence, the jury has found favorably to

the plaintiff. It is insisted, on behalf of the defendant, that the verdict is against the weight of evidence, and should therefore be set aside. The power of the court to set aside the verdict of a jury, when against the clear weight and preponderance of the evidence, is undoubted. (*Finch* v. *Parker*, 49 N. Y., 1; *National Life Insurance Co.* v. *Minch*, 3 Hun, 354; *Barrett* v. *Third Avenue R. R. Co.*, 45 N. Y., 628.) But as we find several errors occurring upon the trial which require us to reverse the judgment, and to order another trial before a jury, we do not consider it timely and judicious to examine the great volume of evidence submitted to us, and express our conclusion upon the weight of evidence. We think it more appropriate that the case, under the circumstances, should be tried before another jury, without an intimation of our opinion upon the weight or preponderance of the evidence.

We do not think we can disregard errors committed upon the trial upon the idea that the result was not affected by them, nor do we think this is a case where we can disregard such errors under or by application of the liberal rule enacted in section 1003 of the Code of Civil Procedure. We proceed, therefore, to point out some of the errors which require us to grant a new trial.

(1) Two witnesses called by the plaintiff gave evidence tending to support the allegation that a ceremony of marriage between plaintiff and deceased was performed at the deceased's house, October 12, 1870, in Lewis county, in the vicinity of Carthage, by Reverend Michael Clark, a Catholic priest, then residing in Schenectady, and having the pastorate of St. John's Church in that city. They also testified that the priest, who died in 1872, *remained* at the deceased's house on that occasion *about two weeks*.

The defendant produced at the trial and offered in evidence the register of baptisms in that church, and proved it to be in the handwriting of the deceased clergyman. The entries therein showed baptisms by him in his parish in that city, occurring on the 1st, 6th, 9th, 10th, 16th and 23rd of October, 1870.

To the admission in evidence of entries made in the book, the plaintiff objected upon the sole ground that it was immaterial.

No other ground of objection can be considered by us, than the one taken at the trial. (*Tooley* v. *Bacon*, 70 N. Y., 34.)

The entries, though not conclusive, tended to establish that the priest was not in Lewis county at the date of the alleged marriage. With that evidence before the jury, they might have doubted the evidence given by the witnesses, to the effect that on the occasion of his supposed presence at the marriage on the 12th of October, 1870, he remained there two weeks. We think the evidence was admissible. It was the entry of a deceased person in the course of the discharge of a professional duty, and therefore within the rule which permits such entries, after the death of the person charged with their performance. (*Higham* v. *Ridgway*, 10 East, 109 ; *Nicholls* v. *Webb*, 8 Wheat., 332 ; *Leland* v. *Cameron*, 31 N. Y., 115.) It was a species of secondary evidence of the fact of the priest's absence from Lewis county at the time of the alleged marriage. (*Livingston.* v. *Arnoux*, 56 N. Y., 519.)

(2) The receipts of December 5, 1871, which were executed by plaintiff's sister, and signed " C. E. Foley, by sister, B. A. Foley " —having been executed by Bridget more than twelve months after she testifies she saw her sister married to Clark—should have been admitted. They were acts inconsistent with her testimony, and, therefore, they should have been allowed to go to the jury, as evidence for their consideration upon the credibility of Bridget in connection with her explanation thereof.

(3) In her cross-examination, after her evidence in chief, of witnessing the marriage of her sister in October, 1870, Bridget was asked, viz. : " Did you tell Mathews, at Widow Foley's house, in the winter of 1871 and 1872, that you had advised your sister to come away from Clark's, and not work there any longer, and that you would make her do so ?" It was objected to as immaterial, and the objection sustained ; and the defendant took an exception.

The ruling was erroneous, as an answer thereto in the affirmative would have borne significantly against the evidence in respect of the marriage. It would have borne very flatly upon the issue as to whether the plaintiff was, at that time, the deceased's wife or hired servant. The plaintiff in the trial was then seeking to establish she was the former, and the defendant to establish that she was only

the latter, working and receiving pay from the deceased merely as such servant.

(4) The witness, John Linstruth, testified to a conversation with Clark, and to an admission therein to the effect that plaintiff was Clark's wife.

Upon his cross-examination he was asked if he did not, in June, 1877, at Wilna, in the presence of another person, say that he did not *believe* plaintiff was married to Clark. This was objected to by plaintiff, and excluded by the court. His answer in the affirmative would have borne somewhat adversely to his testimony. It was a proper question in cross-examination, and ought to have been allowed.

In *Schell* v. *Plumb* (46 How. Pr., 22), MILLER, J., after stating the general rule, that all inconsistent and irreconcilable statements made by a witness, may be shown, says, that "it matters not whether it be a statement of fact or the expression of an opinion, if it be adverse to the story which he has narrated." If it is an opinion in direct conflict with his evidence it would clearly tend to impair the credit of the witness *to some* extent, and in many cases as much, perhaps, *as if it were a fact."* (3 Dept. 1873.)

The errors which we have pointed out lead us to reverse the judgment and order.

TALCOTT, P. J., concurred.

SMITH, J., concurred in result.

Judgment and order reversed and a new trial ordered, with costs to abide the event.