## CAROLINE W. MORRISON *vs.* J. HUNTER SMITH.

*Landlord and Tenant—Forfeiture of Lease for Non-Payment of Rent—Waiver of Forfeiture—Evidence.*

When a lease is liable to forfeiture for non-payment of rent when due, the subsequent receipt by the lessor of that rent is not in itself a waiver of the forfeiture.

But where the lessor had not on previous occasions exacted prompt payment of the rent when due and allows the lessee to remain in possession and make improvements on the premises after a failure to pay the rent according to the terms of the lease, there is in such case legally sufficient evidence, in connection with the subsequent receipt of the rent, to show a waiver of the forfeiture.

Facts showing a waiver of a forfeiture of a lease may be given in evidence under the general issue and need not be specially pleaded.

When a lease provides that it shall become null and void in case default be made in any of the covenants, then a failure to pay the rent at the time it falls due according to the terms of the lease is a cause of forfeiture which renders the lease voidable, at the option of the lessor, but not absolutely void, by the mere fact of non-payment.

Appeal from the Circuit Court for Allegany County, (SLOAN, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and BOND, JJ.

*Taylor Morrison* (with whom was *W. E. Walsh* on the brief), for the appellant.

The lease contains no clause of re-entry; it is not voidable at anyone's option; it is to be void on the happening of an event. Appellee's failure to pay an instalment of rent on October 1, 1893, on which day it fell due and payment of it was demanded, was a breach of his covenant and an event whereby the lease became and was null and void according to its terms. " Another diversity is between

a condition annexed to a freehold, and a condition annexed to a lease for years. * * * because the lease for years, *ipso facto*, by the breach of the condition, without any entry was void ; for a lease for years may begin without ceremony, and so may end without ceremony." 2 *Coke on Litt.* ( Thomas ed, 1827) t. p. 102 ; (88*) ; 1 *Wms. Saund.* (287 *c.*) ; *Shanfelter* v. *Horner*, 81 Md. 628, and authorities there cited.

That the non-payment of the rent when due and demanded put an end to the lease, is practically conceded by appellee, who contends, however, that the subsequent payment of the rent which occasioned the forfeiture, part at Christmas and part in January, was a waiver of the forfeiture and revived the lease the same as if no default had been made. In this appellee is in error, for " in order to render the receipt of rent a waiver, it is necessary that the rent should *have accrued* as well as have been received subsequent to the forfeiture." *Jackson* v. *Allen*, 3 Cowen, 220 ; *Williams* v. *Vanderbilt*, 21 L. R. A. 489 ; *Bleecker* v. *Smith*, 13 Wend. 530.

Subsequent acceptance of the rent, non-payment of which when due and demanded occasioned the forfeiture, was the acceptance of that which belonged to appellant independently of the forfeiture. She had a right to it before the forfeiture took place, and the happening of the forfeiture affected her right in no way. Appellant's right was the same after as it was before the forfeiture—so that the subsequent acceptance of the rent which became due before the forfeiture constituted no new consideration moving from appellee to her, and cannot be construed a waiver of the forfeiture ; for this needs a valuable consideration to support it. *Sodini* v. *Leiter*, 32 Md. 130 ; *Watkins* v. *Hodges*, 6 H. & J. 38.

Appellant was not under any necessity to declare the forfeiture to appellee ; it was brought about by his own independent act without which the lease could not have become null and void. *Williams* v. *Vanderbilt*, 21 L. R. A. 489.

Appellee's failure to pay the rent on October 1, 1893, made the lease null and void, but this did not deprive appellant of her right to the rent, nor indeed of her right to sue for it on the covenant in the lease, because this right accrued prior to the avoidance of the lease and did not cease with the lease ; otherwise appellee would be allowed to take advantage of his own wrong to defeat a right conferred by his own covenant; " and Courts will not so construe the contract as to enable the lessee to put·an end to it at pleasure, by his own improper conduct."   *Clark* v. *Jones*, 1 Denio, 516.

But the case is otherwise as to appellee, because the lease was made null and void by his own act and he cannot blow hot and cold at one and the same time, that is to say, fail to perform his own part of the bargain and at the same time hold appellant to what he claims to be her obligations in the premises.   When appellee failed or refused to pay rent on October 1, 1893, the contract became, by its very terms, *null and void*, and at the same instant appellant's obligations to him under it ceased and determined.   His continuance in possession of the farm afterwards, supposing it to be with appellant's acquiescence or consent, was not under the sealed instrument of lease, but was by virtue of an implied contract comprising the terms of the written lease so far as applicable.   And for the enforcement of his rights under this implied contract, appellee's remedy was by action of *assumpsit*, and not in covenant.   *De Young* v. *Buchanan*, 10 Gill & J. 149 ; 2 *Saund. Pl. & Ev.* (273); 1 *Poe's Pl. & Pr.* (3d ed.) § 150, p. 147.

*Benjamin A. Richmond* (with whom was *Chas. N. Finnell* on the brief), for the appellee.

Even at the early common law it was always held that in estates of freehold granted on condition of payments to be made, the subsequent acceptance of the payment was held a waiver of the forfeiture in all cases where the party accepting the payment had knowledge of the forfeiture. *Chalker* v. *Chalker*, 1 Conn. 91, citing *Co. Litt.*, 218 *a* ; 3

*Salk,* 3. A contrary doctrine in relation to leases for years seems to have at one time prevailed. But this distinction founded on no substantial difference in the justice and reason of the thing was early abandoned and the same rule applied to both kind of terms. *Rede* v. *Farr,* 6 Maule & Selwyn, 121 ; *Arnsby* v. *Woodward,* 6 Barn. & Cress. 519; *Doe* v. *Banks,* 4 Barn. & Alderson, 401 ; *Reid* v. *Parsons,* 2 Chilly's Rep. 247 (*a*). " It is held in relation to leases for years as well as those for life that the happening of the cause of forfeiture only renders the lease void as to the lessee. It may be affirmed by the lessor ; and then the rights and obligations of both parties will continue without regard to the forfeiture." *Clark* v. *Jones,* 1 Denio, 519.

In the above case the facts are almost precisely similar to the one at bar. There was a lease for years to be null and void on the non-payment of rent. There was a default in the payment of the rent when due, and a subsequent payment and acceptance of the same, and it was held that the acceptance of the rent was a waiver of the forfeiture, and continued the lease. Upon the default it was void as to the lessee, at the option of the lessor ; but as to him it was voidable only. This seems consonant to reason and justice. If the lessor desires to stand on the harsh limits of his rights he may do so. He may claim a forfeiture and re-enter the premises. But by failing to do that and, as in this case by permitting the tenant to remain in possession, farming and improving the land for nearly four months after the forfeiture, and accepting the rent due and giving a receipt in full for it, the appellee has waived the forfeiture. During that time it was voidable at her option. She elected to waive her right to claim a forfeiture, and by her conduct re-affirmed the lease.

That upon a breach of covenant by the lessee the lease is only voidable at the election of the lessor, and not absolutely void, seems to have been expressly decided in this State. *Western Bank of Balto.* v. *Kyle,* 6 Gill 343. That forfeitures in leases may always be waived by the lessor

and the lease continued, and that the receipt of rent after the forfeiture will amount to such waiver, we refer to *Fryctt* v. *Jeffries*, 1 Esp. 393 ; *Duppa* v. *Mayo*, 1 Saund. 287 ; *Gombee* v. *Hackett*, 6 Wis. 323 ; *Jackson* v. *Sheldon*, 5 Cowen 448; *McKildo* v. *Darracott*, 13 Gratt. 278 ; *Atkins* v. *Chilson*, 11 Met. 112.

BOND, J., delivered the opinion of the Court.

The controversy in this case is between the parties to a lease, and arises over its construction, especially the last clause.   It is as follows :  " This lease, made this 30th day of March, 1888, by and between Caroline Morrison, of Allegany County, State of Maryland, party of the first part, and J. Hunter Smith, of Mineral County, State of West Virginia, party of the second part :

" Witnesseth, that for and in consideration of the covenants hereinafter set forth, the said party of the first part doth lease and demise unto the party of the second part, all that farm or parcel of land known as the Ashby Place, for the term of seven years, beginning on the first day of October, 1887, and ending on the first day of October, 1894.

" And the party of the second part doth agree and bind himself, his heirs and representatives to pay or cause to be paid the sum of one hundred and fifty dollars for each and every year of said term, to be paid half-yearly, that is, seventy-five dollars on the first day of April, 1888, and seventy-five dollars on the first day of Octobor, 1888, and so on to the end of said lease.

" And the party of the second part doth further covenant and agree to bring under proper cultivation and drainage and fencing up with rails or post and board fence all the bottom land belonging to said tract lying between the county road and the Potomac River, also to have the privilege to clear out and fence up all the land lying against the mountains that he would deem advantageous to both parties, but he is in no case to allow to be cut any timber except what is to be used on the premises, without the consent of

the party of the first part; and it is further agreed that the party of the second part shall not and will not at any time during the term of seven years let or demise, or in any manner dispose of the hereby demised premises, or any part thereof, for the term hereby granted, to any person or persons, nor to occupy or use the same in any other manner than for regular farming or gardening purposes, or to permit the egress and ingress of any person or persons to said land, without first obtaining permission from the said party of the first part.

" And the party of the second part binds himself to erect a stable and other buildings at his own expense.

" And the party of the first part for herself, her heirs and representatives covenants and agrees to erect a good and substantial farm-house for the use of the party of the second part.

" And it is further agreed by the parties to this lease that in case the party of the first part wishes to sell said property hereby demised, she may do so by paying to the party of the second part a fair valuation for all improvements he may make up to the time of sale, but in case of no sale is made, then the party of the first part at the expiration of this lease agrees to give to the party of the second part the refusal of a further five years' lease at such rent as any good and *bona fide* person will agree to give.

" And is it further covenanted and agreed by and between the parties hereto, that in case default shall be made in any of the covenants of this lease, then it shall be null and void.

CAROLINE W. MORRISON, [Seal].

J. HUNTER SMITH,        [Seal]."

It will be perceived by one of its provisions, that the term of seven years was liable to interruption and termination by a sale of the farm ; in which event it was provided that the tenant, appellee, should be paid " a fair valuation for all improvements " he might make to the time of the sale.   The appellee entered and took possession of the farm under the lease and held it until about the 1st of May, 1894.   About

the 1st of March of that year, 1894, he received a written notice from a Mr. Davis to the effect that he had become the purchaser of the farm.   Upon receipt of such notice he called upon the appellant to learn whether she had in fact made a sale, and was told that she had, and that she had sold the property to Mr. Davis.   He thereupon removed from the farm about the 1st of May and gave possession up to Mr. Davis, in accordance with the terms of his agreement, before the expiration of the full term of seven years; and then brought this suit for the improvements made by him on the covenant to repay in case of such sale.   The amount claimed for such work and improvements, according to the bill of particulars accompanying the *narr.*, was $1,197.43, and the sum awarded him by the jury was $544.95. The appellant, as defendant below, filed two pleas to the declaration.   Only with the first are we concerned.   By her first she claimed that the plaintiff had incurred a forfeiture of the lease by reason of his failure to pay the instalment of rent due October 1st, 1893, on which day it fell due and was demanded.   A demurrer was filed to this plea and very properly overruled, as we think.   The plaintiff then filed his replication alleging that he had paid the rent, which fell due October 1st, 1893, *on the 20th day of January, 1894, whereby the defendant had waived the forfeiture of the lease set up in her said first plea.*   To this replication, the defendant entered a demurrer which was by the Court overruled, and issue subsequently joined thereon.   The first question to arise on this record and a very important one to the case, is as to the sufficiency of this replication and the correctness as to the ruling of the Court on the demurrer.

On the authorities cited and others examined by us, we are constrained to differ with the learned Court in the conclusion reached by it on this demurrer; and must hold that the replication was wholly bad and insufficient and that the demurrer ought to have been sustained.   It, in terms, conceded a forfeiture had been incurred by the plaintiff in the non-payment of the October instalment of rent, but sought

to obviate such effect and revive the lease, on the principle of waiver, by alleging the bare subsequent payment by him *and the receipt of said rent by the lessor, of the very rent, the non-payment of which had occasioned the forfeiture.* " The receipt of rent after a breach of covenant does not operate as a waiver unless the rent received accrued subsequently to the act which works the forfeiture." *Bleeker v. Smith,* 13 Wend. 530; *Williams v. Vanderbilt,* 21 L. R. A. 489; 12 *Am. and Eng. Ency. of Law* (1st ed.) 758 *n.* " The ordinary *waiver of forfeiture* occurs by an acceptance of rent *which became due after a breach committed by the tenant.*" Section 497, *Taylor's Landlord and Tenant* (7th ed.) This seems to be the well recognized rule of law on the subject settled by the great weight of authorities, if not by all.

We entirely agree with the learned counsel for appellee in the assumption of his replication, that a forfeiture of the lease was incurred by the non-payment of the October instalment of rent, but we do not agree with him in holding that the bare subsequent receipt of *such rent* by the lessor as therein set up, *constituted in law, a waiver of the forfeiture.* All the authorities agree, *that a waiver cannot be established by such a fact alone.* We hold, also, that upon a proper contruction of the lease, considering all its terms and provisions with the view of arriving at the intention of the parties, that it was voidable only upon a breach of the covenant by the lessee at the election of the lessor, and not absolutely void as contended for by the appellant; and we further hold that such forfeiture could be shown to have been waived by the lessor by the offer of suitable evidence to that effect before the trial court. " In my view of cases of this sort," says LORD TENTERDEN in the case of *Doe & Davis v. Elsam,* 1 M. & M., 189, "the provisos ought to be construed according to fair and obvious construction without favor to either side," and he adds also " as other contracts." See, also, *Clark v. Jones,* 1 Denio, 516, 518; *Duppa v. Mayo,* 1 Saunders, 287, and many others could be cited.

We may add, in conclusion, that there appears from the record, proper evidence to go to the jury from which they might find a waiver of the forfeiture by the appellant. Such, for instance, as that the lessor had never before exacted the prompt payment of rent and had permitted the lessee to remain from October 1st to March 1st, following, a period of five months—without the slightest intimation that the lessor intended to enforce the forfeiture, although during this period the lessee was engaged in improving the farm under the stipulations of the lease and engaged in farming the same, together with the conversation of the appellee with the appellant when he went to see her after he had received the notice of the sale from Mr. Davis, the purchaser. These and other like facts tending to show waiver, being *in pais*, could have been offered to the jury without being pleaded, as decided in the case of *Babylon* v. *Duttera*, 89 Md. 444.

From what we have said on the demurrer to the replication, it follows that the plaintiff's prayer was defective in leaving to the jury to find, on the question of waiver, simply that plaintiff " paid defendant the rent stipulated to be paid on said lease," without reference to the time when payable under the lease or submitting to them to find acts and declarations of appellant excusing him from such non-payment of rent at the time due and payable.

We have said enough to indicate our view on appellant's first prayer and it is unnecessary to add more.

Finding error in the Court's ruling on the demurrer to replication, and in the granting of plaintiff's first prayer, on the grounds stated, we must reverse the judgment and award a new trial.

> *Judgment reversed and new trial awarded with costs.*