STREETER et ux. *v.* MIDDLEMAS et vir

[No. 429, September Term, 1964.]

170

 

 

 

*Decided October 13, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, OPPENHEIMER and BARNES, JJ.

*Harold R. Berson,* with whom were *William A. Ehrmantraut* and *Donahue, Ehrmantraut & Mitchell* on the brief, for the appellants.

*R. Edwin Brown* and *Daniel W. Moylan,* with whom were *E. Stuart Bushong, Manuel M. Weinberg, Seymour B. Stern, Bushong, Byron & Moylan* and *Weinberg & Weinberg* on the brief, for the appellees.

MARBURY, J., delivered the opinion of the Court.

In 1958 the appellants, Mr. and Mrs. Clarence R. Streeter, Jr., sold to one of the appellees, Rosalie V. Middlemas, commercial property located in Rockville, Maryland, for a price of $70,000. As part of this transaction, the property was leased to the Streeters for a period of fifteen years, beginning on December 8, 1958, with an option to renew for ten additional years, if no provisions of the lease were breached by the "tenant". The tenant, among other things, covenanted to pay a basic rent of $583.33 per month, and to pay taxes and assessments made against the property during the time the lease remained in effect. The lease provided that if the rent should be in default for more than five days the lease would, at the option of the "landlord", "fully cease and terminate."

In January 1963 the appellees brought suit in ejectment in the Circuit Court for Montgomery County, against the appellants, alleging that the appellants had breached the terms of the lease, that the lease by reason of the breach had expired, that the appellants were holding said property against the will of the appellees, have ejected the appellees therefrom, and retained possession thereof. The appellees claimed recovery of the land and premises, and damages in the amount of $5,000.

To the declaration the appellants filed a general issue plea of "not guilty" and a plea on equitable grounds that even though they may have violated the covenants in the lease, the violations were not of such a nature as to operate to terminate the lease. After a hearing on a motion for summary judgment in the Circuit Court for Montgomery County which was denied by that court, upon the suggestion of the appellants, the case was ordered removed to the Circuit Court for Washington County for trial.

At the trial before Judge Rutledge without a jury, in August 1964, the appellant Streeter admitted that he had given six rent checks to the Middlemases which were not accepted by the drawee bank due to insufficient funds. Although these checks were subsequently made good, their initial non-payment unquestionably resulted on these six occasions in the late payment of rent. In December 1962, Mr. Middlemas personally presented to the bank on which they were drawn five more rent checks which had accumulated because the payees had been unable to cash the checks due to the drawer's insufficient balance to cover the checks at the time of presentment. Of the five checks presented in December, four were cashed and the fifth was not paid due to insufficient funds. This fifth check was presented and cashed in January 1963, but another check for the rent due on January 1, 1963, was not paid, due again to insufficient funds. It was this breach of the covenant to pay rent, as well as the covenant to pay 1962 taxes, upon which suit was instituted. Mr. Streeter testified that the reason this last check was dishonored was due to the fact that a check made to him by a subtenant and deposited in his checking account had not been paid due to lack of funds. It was also established that the lessees (appellants) failed to pay the taxes due in 1959 and 1960. When the tax collector threatened to sell the property, the appellees paid them and then sued the Streeters on both occasions, and collected the tax money. Because of an abortive suit for repossession instituted in the People's Court of Montgomery County, in July of 1962, and upon advice of counsel, the tax bills for 1962 were not sent to the Streeters and they did not pay them. After the instant suit was filed the taxes for 1963 were paid by the appellees.

Before the lower court, the appellants successfully contended that a court on equitable grounds has the right to restrain the forfeiture of a lease in a case where the loss caused by the forfeiture would be wholly disproportionate to the injury caused by the breach. In his opinion of August 24, 1964, Judge Rutledge weighed the fact that the suit was instituted upon failure to pay but one month's back rent, represented by one bad check, and a failure to pay the taxes for 1962, against the fact that the 1962 tax bill was purposely not forwarded to him. While finding in his same opinion that the appellants' conduct had been "slipshod and irresponsible to the point of verging on the wilful," he decided that the appellants were entitled to equitable relief against the forfeiture of such a valuable lease on the condition that the lessees "pay into court all rent and taxes, together with all interest or penalties on the same within thirty days from the date of this order." The order referred to, dated August 24, 1964, specified that all taxes due as of October 1, 1963, and all rent due as of August 24, 1964, were the sums to be paid into court within thirty days. Although the sum was not spelled out, the total amount due was $4,873.30. The court then retained jurisdiction and ordered the case to be continued. Within the thirty day period the appellants paid no money into court. On the thirty-first day a check was tendered to the clerk of the court for $2,160, on which was the notation "taxes for 1962, and rent for January 1963." The check failed to provide for any amount to cover the rent due on August 1, 1964, and the taxes due for 1963. The court then, on September 24, 1964, ordered that the verdict in the case "be entered for the plaintiffs for the possession of the lands claimed in the declaration, and damages in the amount of $4,873.30 consisting of state, county and city real estate taxes for 1962 in the amount of $1,577.69 and for 1963 in the amount of $2,128.95, and monthly rental payments in the amount of $583.-33 for January 1963 and August 1964, and cost of these proceedings." Appellants' counsel requested and were granted a hearing on this final order when tender of the total amount due under the August 24, 1964, decree was made. Upon the lower court's refusal to rescind its order, an appeal was noted from both the orders and decrees of August 24, and September 24, 1964.

On this appeal, appellants' contentions are many. It is first contended that the lease provided that the tenants were entitled to notice by the landlords on each date the rent was due, and the latter's failure to so notify absolved the tenant of any default. The short answer to this is that the lease contains no such novel provision. The lease clearly distinguished between default in payment of rent and default in "other covenants." Only in instances of the violations of the latter covenants by the tenants did the lease provide that notice of default was required.

Another contention is that a tenant may at any time before the trial in an ejectment suit, pay or tender all back rent, together with costs, whereupon all further proceedings shall cease and be discontinued. For this proposition he cites the Statute of 4 Geo. 2, Chapter 28, Section 4, 2 Alexander's British Statutes, (Coe's Ed.), 950, and points out that the tender of the January 1963 rent and the taxes for 1962, was made at the start of the trial of the instant case. The right to tender rent in an ejectment action cited above is part of the same Act which gave a statutory right in the landlord to eject a delinquent tenant whenever one-half year's rent was in arrears, notwithstanding absence of an express provision in the lease to that effect. This relief is limited in its scope to cases instituted under the Act as substantially re-enacted by the Legislature and codified as Code (1957), Article 75, Section 27. See Maryland Rule T42. This Court has never applied this statutory provision to a case such as this, where there is a written lease which, by its express terms, makes provision for termination upon the happening of certain defaults.

The Streeters next contended that the receipt by the landlord of the rent and his actions in the latter part of 1962 operated as a waiver of alleged prior breaches. In their brief, and at oral argument they suggest that the landlords rushed in, without warning, in January 1963, to capitalize on a technicality in order to terminate a valuable commercial lease. They admitted that under the lease, waiver of a prior breach does not waive future ones. However, they assert that the past breaches of the covenant to pay the rent within five days after it became due had been waived, because the checks for the overdue rent were

cashed at a time when the tenant was spending many thousands of dollars in valuable improvements. Article XII of the lease expressly states that "receipt by the Landlord of rent with knowledge of the breach of any covenant or condition hereof shall not be deemed a waiver of such breach * * *." The lease further provided: "No waiver by the Landlord of any provision hereof shall be deemed to have been made unless expressed in writing and signed by the Landlord." In any event the landlords' actions clearly established a no waiver policy. They twice were forced to institute suits to collect back taxes, and in July of 1962 brought suit in the People's Court of Montgomery County to recover possession of the premises. Even after this suit was terminated because of the lack of jurisdiction of the People's Court, the breach of the covenant to pay rent when due continued. It is clear that the tenants were not misled as to the landlords' determination to enforce their rights under the lease. Thus the former breaches were not waived and could properly be given consideration by the trial judge when deciding whether it was appropriate to grant equitable relief to prevent the forfeiture of the lease.

Three other contentions made by the appellants have as their common denominator their frivolousness. First, the appellants assert that a forfeiture clause in a lease shall be strictly construed against the party seeking to invoke it. However, the clause in the lease before us is clear and unambiguous so that this proposition is immaterial. Second, they contended that it was error for Judge Rutledge to admit into evidence testimony as to any subject other than the breach of the covenants to pay rent and taxes, since no other breaches were properly pleaded. Such error, if there was any, was harmless because the lower court found insufficient evidence to support any breaches other than of the covenants to pay rent and taxes. Equally without merit is appellants' third claim that we should apply the Uniform Commercial Code to certain commercial events which took place before that Code became effective on February 1, 1964.

As we see it the appellants' principal contentions on this appeal are two: (1) that the judgment of August 24, 1964, was for an amount not in controversy, i.e., rent and taxes due after suit was filed; and (2) that the August 24, 1964, order

was defective in that it did not spell out the exact dollars and cents figures payable into court by the appellants. While it is true that at the trial there was no controversy that it was the tenants' duty to pay all rent and taxes, it was also uncontroverted that the taxes for 1963 or the rent for August 1964 had not been paid. Obviously, the judge was justified in including these sums which were due and owing in the total figure which he decreed payable in order to prevent a forfeiture. The court explicitly stated in its August 24, 1964 order that the amount payable was all rent due as of the date of the order and all taxes due as of October 1, 1963, together with any interest or penalties thereon. Appellants assert that they were unable to determine how much the taxes were for the year 1963 because the appellees' attorney would not provide them with this information. Taxes due on land are no secret, as the amount thereof is easily obtainable from the taxing authorities. Even assuming that the 1963 tax figures could not be obtained in the manner in which they were sought, no money was paid into court within thirty days, and the check which was tendered to the clerk of the court on the thirty-first day completely ignored the August 1964 rent, the amount of which the appellants knew.

In the order of August 24, 1964, the trial court went extremely far in attempting to prevent a forfeiture of this lease, and it was certainly not incumbent on the judge to make an independent ascertainment of the amounts, the payment of which would avoid the forfeiture of the lease.

We think the judge was correct in entering the judgment under the circumstances confronting him.

*Judgment affirmed, costs to be paid*
*by the appellants.*