JACK O. CHERTKOF, Trustee of David
W. Chertkof Trust *v.* THE SOUTH-
LAND CORPORATION et al.

[No. 86, September Term, 1976.]

*Decided March 22, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Edwin J. Wolf,* with whom were *Archibald Eccleston, III* and *Eccleston, Seidler & Miller* on the brief, for appellant.

*Lawrence F. Rodowsky,* with whom was *Fred Wolf, III* on the brief, for The Southland Corporation; *Norman P. Ramsey* and *Joseph A. Schwartz, III* on the brief for 31 Flavors Stores Realty, Inc. and Baskin-Robbins Eastern Corp., appellees.

LEVINE, J., delivered the opinion of the Court.

The question presented here is whether a lessor, despite his written disclaimer of any intention to do so, waived a lessee's breach of covenant in a lease by accepting rent which accrued subsequent to the breach. Following a nonjury trial, the Superior Court of Baltimore City (Liss, J.), in a thoroughly considered opinion, held that waiver could occur even though the lessor had acknowledged acceptance of the rent by a unilateral reservation, and further found as a fact that the lessor had waived the breach of a covenant prohibiting assignment of the lease without his consent. An appeal was taken from that decision to the Court of Special Appeals, but we granted certiorari prior to consideration of the case by that court.[1] We affirm.

In 1963, Southland Corporation (Southland) acquired certain assets from Delvale Dairies, Inc. (Delvale), including two territorial franchise agreements with Baskin-Robbins 31 Flavors Stores, Inc., together with an ice cream and catering business operated at 4808 Roland Avenue in the Roland·

---

[1]. This case has twice been the subject of an appeal. The first appeal was dismissed by this Court pursuant to Maryland Rule 605 a because it had not been taken from a final judgment. That defect was subsequently remedied in the trial court and now the matter is properly here.

Park Shopping Center of Baltimore. In April 1965, the owner of those premises entered into a lease (the prime lease) with Southland for a 10-year term to commence on July 1, 1965, for an agreed rental of $5,000 per annum plus a specified percentage of gross sales and a charge for the use of parking facilities.[2] Southland covenanted in the prime lease "not to assign or sublet all or any part of [the] premises without the written consent of [the] Lessor."

Prior to actual commencement of the lease, Southland decided to sever the ice cream and catering operations, both of which were being conducted by Audrey C. Fogelsanger (Fogelsanger), who had been a longtime employee of Delvale. To this end, Southland divided the leased premises, and sublet for a term of nine years and 11 months, to commence July 1, 1965, the basement portion and also the rear of the first floor (the "catering portion") to Fogelsanger, who there continued to operate her catering business. Southland then sublet the remainder or front part of the first floor (the "ice cream portion") to 31 Flavors Stores Realty, Inc. (31 Flavors) for a 10-year term commencing July 1, 1965; 31 Flavors, in turn, proceeded to sublet the ice cream portion to Fogelsanger for all but the final two months of its sublease. The result was that Fogelsanger continued the ice cream and catering operations, but as separate undertakings.

On December 30 and 31, 1971, Southland entered into a series of transactions with Baskin-Robbins Eastern Corp. (Baskin-Robbins), to which it sold and transferred its interest in the territorial licensing and franchising agreements acquired from Delvale, together with retailer agreements, leases and subleases, and its interest in the subleases and franchise agreements which it had with Fogelsanger. Also, by a document entitled "Prime Lease Assignment," Southland assigned to Baskin-Robbins its interest in the prime lease. Pursuant to an agreement with

2. When the prime lease was executed in 1965, the owner of the premises was Roland Park Shopping Center, Inc., which was dissolved in 1969. The David W. Chertkof Trust is the successor to the dissolved corporation, and Jack O. Chertkof, surviving trustee, is the appellant here. For convenience, we shall refer to appellant as the lessor.

Baskin-Robbins, however, Southland paid to the lessor the rent due under the prime lease for the first three months of 1972.

In assigning the prime lease to Baskin-Robbins, Southland neither sought nor obtained the written consent of the lessor. The transaction came to the lessor's attention in May 1972, when, in response to his written request for the overdue April rent, he received a telephone call from Southland's comptroller informing him that the prime lease had been assigned to Baskin-Robbins. The lessor, through his agent, responded to this disclosure with a letter to Southland dated May 31, in which he declared the prime lease "null and void and cancelled" because it had been assigned without his written consent. Additionally, he wrote:

> "The acceptance of check (or checks) that we receive from Baskin Robbins of California [31 Flavors] as payment of rent shall not be construed as approval of assignment by Southland Corporation since rent is due for the occupancy of the premises. . . ."

The lessor thereafter, for every month from April 1972 to the trial of this case on October 7, 1974, cashed a series of checks drawn by 31 Flavors in payment of the base rent and parking lot fee.

Negotiations commenced in July 1972 for a new lease between the lessor and Baskin-Robbins for the ice cream portion, but never came to fruition; a proposed new lease between the lessor and Fogelsanger for the catering portion was actually executed by her, but not by the lessor. She nonetheless paid to the lessor the rent specified in that proposed new lease through May 31, 1973, when she vacated the catering portion of the premises. The sums which Fogelsanger paid during that 11-month period were something of a windfall for the lessor, since 31 Flavors also paid him the rent for the entire premises. Fogelsanger presently operates the ice cream business, apparently as a sublessee of Baskin-Robbins, which continues to occupy the

ice cream portion of the premises while its corporate affiliate, 31 Flavors, pays the lessor the monthly base rent of $416.66 plus the $20 parking fee provided in the prime lease.[3]

In November 1972, the lessor filed the action for ejectment from which this appeal arises. In addition to seeking possession, the lessor requested damages for detention of the premises.[4] Judge Liss found that Southland, by failing to obtain the lessor's written consent, breached the covenant against assignment of the lease. The correctness of that decision is expressly conceded by appellee, and we are not concerned with it here. We turn, then, to the contention that the trial court erred in its determination that the lessor waived the breach of covenant by accepting subsequently accrued rent after learning of the breach, despite the unilateral reservation expressed in his letter.

We have followed the traditional view in Maryland that since forfeitures for breach of covenant are not favored, any slight acquiescence in a breach will be construed as a waiver of the forfeiture. *Live Stock Co. v. Rendering Co.*, 179 Md. 117, 125, 17 A. 2d 130 (1941). This principle has been applied particularly in regard to covenants against assignment, which, because they are restraints on alienation, have been strictly construed. *Jacobs v. Klawans*, 225 Md. 147, 151-52, 169 A. 2d 677 (1961). *See generally Ammendale Normal v. Schrom*, 264 Md. 617, 625-29, 288 A. 2d 140 (1972).

Waiver is the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such a right. *Food Fair v. Blumberg*, 234 Md. 521, 531, 200 A. 2d 166 (1964); *Gould v. Transamerican*, 224 Md. 285, 294, 167 A. 2d 905 (1961). An act of the lessor which is frequently relied upon to establish waiver is his acceptance of rent from the assignee with knowledge of the assignment. 1 American Law of Property § 3.58 (Casner ed. 1952). Thus, we apply in Maryland the universal rule that a

---

**3.** The percentage rental payments due under the prime lease for the period covering July 1, 1971 through the present have never been paid, but are not the subject to this dispute.

**4.** Since the prime lease terminated on June 30, 1975, it is the prayer for damages which saves this appeal from mootness.

waiver of forfeiture may occur by an acceptance of rent which accrues after the lessor is on notice that a breach has been committed by the lessee. *Ammendale Normal v. Schrom*, 264 Md. at 624; *Morrison v. Smith*, 90 Md. 76, 83, 44 A. 1031 (1899); *cf. In Re Hook*, 25 F. 2d 498, 499 (D. Md. 1928) (distraint for rent, accruing after right to declare forfeiture, constituted waiver; "[t]he acceptance of rent, eo nomine, generally, if not always, has [the effect of waiving the forfeiture]"). The underlying rationale for the rule is simple enough: acceptance of rent accruing after the breach is an affirmation of the tenancy and a recognition of its continuation; in effect, the lessor elects to continue the relationship of landlord and tenant.

We have, in common with many other courts,[5] treated the question of waiver of a breach by the acceptance of rent as a matter of intent, which necessarily turns on the factual circumstances of each case. *See, e.g., Streeter v. Middlemas*, 240 Md. 169, 174-75, 213 A. 2d 471 (1965); *Schlerf v. Bond*, 139 Md. 10, 14-15, 114 A. 739 (1921). *See generally Rose and Crown, Ltd. v. Shaw Ent.*, 28 Md. App. 548, 552-57, 346 A. 2d 459 (1975), *cert. denied,* 276 Md. 749 (1976). In considering the question of intent, some courts have said that acceptance of rent accruing after a breach of covenant raises a rebuttable presumption of waiver, *see, e.g., Rose and Crown, Ltd. v. Shaw Ent.*, 28 Md. App. at 555-57; *Mobil Oil Corporation v. Burdo*, 69 Misc. 2d 153, 329 N.Y.S.2d 742, 747-48 (Dist. Ct. 1972), while others have held that the acceptance of rent in such circumstances creates merely an inference of waiver, *see, e.g., in re Wil-low Cafeterias*, 95 F. 2d 306, 309 (2d Cir.), *cert. denied,* 304 U. S. 567 (1938); *Karbelnig v. Brothwell,* 244 Cal. App.2d 333, 53 Cal. Rptr. 335, 340-41 (1966). The important point to be made is that the acceptance of rent, even though it accrues after the

5. *See, e.g.,* Sessions, Inc. v. Morton, 491 F. 2d 854, 858 (9th Cir. 1974); Jose v. Iglesias, 462 F. 2d 214, 216 (9th Cir. 1972); In re Wil-low Cafeterias, 95 F. 2d 306, 309 (2d Cir.) *cert. denied,* 304 U. S. 567 (1938); Kaybill Corporation, Inc. v. Cherne, 24 Ill. App.3d 309, 320 N.E.2d 598, 606-607 (1974); Blanchard v. Shrimp Boats of Louisiana, Inc., 305 So. 2d 748, 749 (La. App. 1974); Garibaldi v. Oklahoma Industrial Finance Corp., 543 P. 2d 555, 557 (Okla. 1975); Sferra v. Urling, 324 Pa. 344, 188 A. 185, 186 (1936), *on appeal after remand,* 328 Pa. 161, 195 A. 422, 427 (1937); Jensen v. O.K. Investment Corporation, 29 Utah 2d 231, 507 P. 2d 713, 717 (1973).

breach of covenant, does not establish waiver as a matter of law.

In determining that a waiver had occurred here, the trial court did not treat the issue as one of law, but rather found as a fact "that the action and conduct of the Lessor amounted to a waiver of [his] right to a forfeiture of the estate granted by the lease." The lessor, in attacking this ruling, argues strenuously that the reservation in his letter to Southland dated May 31, 1972, established as a matter of law his intent not to waive the breach, and that the trial court therefore erred in finding a waiver in this case. The trial judge ruled that the reservation in the letter, being unilateral, did not compel a holding that the lessor had avoided a waiver and had retained his right to declare a forfeiture.

Whether a lessor may avoid waiver of a breach of covenant by unilaterally qualifying his acceptance of subsequently accrued rent is a question which apparently we have never decided. What few authorities exist elsewhere tend to support the trial judge's decision here. A leading case on point is *Miller v. Reidy,* 85 Cal. App. 757, 260 P. 358, 360 (1927), where a lease had been assigned without the consent of the lessor in violation of a covenant, but the lessor nevertheless accepted rent payments for more than two years after learning of the assignment. Each payment was acknowledged by a receipt which stated that payment was "without prejudice to any of [the lessor's] rights under the lease of said premises." The court aptly observed that the lessor was seeking to "eat the cake and still keep it," since accepting the rent while declaring the forfeiture resulted in "an irreconcilable inconsistency." Recognizing that "[w]aiver is a question of intention," the court affirmed a finding by the trial judge that the lessor had waived the breach. *See Woollard v. Schaffer Stores Co.,* 272 N. Y. 304, 5 N.E.2d 829, 832 (1936).

As we have intimated, it is significant that the lessor's attempted reservation of his right to declare a forfeiture was unilateral. Had the reservation been the subject of express agreement, a different result might have obtained. *See*

*Streeter v. Middlemas*, 240 Md. at 175 (lease provided that " 'receipt by the Landlord of rent with knowledge of the breach of any covenant or condition hereof shall not be deemed a waiver of such breach' "). In *Karbelnig v. Brothwell*, 53 Cal. Rptr. at 336, where the lessor also accepted rent after the lessee violated a lease covenant prohibiting assignment, the lease expressly provided that the subsequent acceptance of rent was not to be a waiver of any breach of covenant. Although acknowledging continued vitality of the rule applicable to unilateral reservations, as enunciated in *Miller v. Reidy*, 260 P. at 360, the court held that the inference of intent to waive, arising from the acceptance of rent, was rebutted by the express agreement between the parties. *Accord, in re Wil-low Cafeterias*, 95 F. 2d at 309. *But see Geraghty v. Kiamie Fifth Avenue Corp.*, 210 F. 2d 95, 98 (2d Cir. 1954); *Gonsalves v. Gilbert*, 44 Hawaii 543, 356 P. 2d 379, 384 (1960); *Sagson Co. v. Weiss*, 83 Misc. 2d 806, 374 N.Y.S.2d 88, 89 (App. T. 1975), in each of which there was a finding of waiver despite an express provision in the lease that acceptance of rent with knowledge of a breach of covenant was not to be deemed a waiver.

The lessor relies heavily on the recent decision of the Court of Special Appeals in *Rose and Crown Ltd. v. Shaw Ent.*, 28 Md. App. at 552-57, but we think his reliance is misplaced. There the lessor sought to declare a forfeiture for failure to make certain percentage rental payments and to furnish statements of gross receipts. In acknowledging payments accruing after the breach had occurred, the lessor accepted them, not as rent, but "on the basis of quantum meruit damages for the tenant's continued breach of the Lease." *Id.* at 550-51. The lessor would have us read *Rose and Crown* as supporting the proposition that a unilateral reservation avoids waiver as a matter of law. The Court of Special Appeals, however, properly applied the rule that acceptance of the payments, although evidence of intent to waive, did not conclusively establish waiver. In sum, the court merely upheld the factual determination by the trial judge that acceptance of the payments did not indicate an

intention to waive the forfeiture. Here, as we have emphasized, the trial judge found from the evidence that a waiver had occurred, and, moreover, that the payments were accepted as rent. The fact that those rent payments were in the form of checks drawn by the corporate affiliate of the assignee of the prime lease is of no consequence; what matters is that they were not paid by Southland, which, as the lessor knew, had previously effected an assignment of the lease.

In finding that the lessor had waived the breach of covenant, the trial judge relied not only on acceptance of the subsequently accrued rent, but also on the lessor's negotiations for a new lease with Fogelsanger and receipt of increased rental payments from her while accepting rent for the entire premises from 31 Flavors under the forfeited lease. Further, negotiations for a new lease continued over a period of months before the lessor finally instituted his ejectment action. From all this, the court found that the true intention of the lessor, rather than to enforce the lease, was to negotiate a more lucrative lease. In these circumstances, we cannot say that the finding of waiver was clearly erroneous.

*Judgment affirmed; appellant to pay costs.*